IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL HOLLAND, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-25-00233-JD |
| ) | |
| JUSTIN KUTZ, an individual; and ) | |
| CROSS COUNTRY EXPRESS, LLC, ) | |
| a Wisconsin limited liability company, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is the partial Motion to Dismiss ("Motion") filed by Defendants Justin Kutz and Cross Country Express, LLC ("Cross Country") [Doc. No. 18] directed at Plaintiff Michael Holland's ("Plaintiff") Amended Complaint [Doc. No. 5]. Plaintiff responded ("Response") [Doc. No. 21], and Defendants replied ("Reply") [Doc. No. 25]. For the reasons outlined below, the Court grants in part and denies in part the Motion.

### I.  BACKGROUND

Plaintiff is a member of the following companies: Rufnex Industrial LLC; Rufnex Oilfield Services LLC; and Rednex Oilfield Rentals LLC (collectively, the "Companies"). [Doc. No. 5 ¶ 8]. The Companies provide support services for the oil and gas industry and offer rental equipment. [*Id.* ¶ 10].

In 2020, seeking loans to aid the Companies during the COVID-19 pandemic, Plaintiff contacted Madison One Capital, LLC ("Madison One"), a loan services provider helping borrowers secure government guaranteed loans. [*Id.* ¶¶ 11–12]. Christopher

Balestrino is the Managing Director of Madison One and has been Plaintiff's point of contact. [*Id.* ¶ 12]. From August 2020 to December 2023, Madison One coordinated loans to the Companies from U.S. Eagle Federal Credit Union ("U.S. Eagle"). [*Id.* ¶ 14]. Pursuant to four loan agreements between U.S. Eagle and the Companies, the Companies executed five promissory notes. [*Id.*]. All communications regarding the loans were made via Madison One, and Plaintiff never directly communicated with U.S. Eagle. [*Id.* ¶ 15]. As a condition of the loans, Plaintiff executed personal guarantees for each loan. [*Id.* ¶ 16].

Between March 2022 and July 2023, due to a variety of factors, Plaintiff became concerned about the Companies' ability to meet their debt obligations. [*Id.* ¶ 20]. On April 16, 2024, Plaintiff met with Balestrino and his partner and discussed options for Plaintiff to confront the Companies' debt. [*Id.* ¶ 22]. Plaintiff believes that, due to the impending acquisition of Madison One, Balestrino wanted Plaintiff to continue payments on the U.S. Eagle loans, as opposed to filing bankruptcy or negotiating a workout with U.S. Eagle. [*Id.* ¶¶ 22–23].

In May 2024, Balestrino introduced Plaintiff to Kutz, whose company Cross Country ultimately purchased the Companies. [*Id.* ¶¶ 25, 30–38]. Plaintiff, Cross Country, and Kutz executed the Purchase Agreement and the Amended Operating Agreements, pursuant to which Cross Country purchased 80% of the Companies' shares. [*Id.* ¶¶ 31, 36]. The Purchase Agreement includes the following provisions:

> 1.5.2. Purchase Price. The purchase price for the Purchased Interests shall be $2,600,000.00 (Two-Million-Six-Hundred-Thousand Dollars) which Seller agrees those funds shall immediately apply to the outstanding credit

> card debts, outstanding payables, equipment repairs, insurance premiums, and payroll of the Companies. Buyer will maintain the installment payments on any existing loans, payable in a timely manner. The money allocated to these debts and expenses will be captured separately on a schedule maintained by the Buyer.
>
> 1.5.2.3. Equipment as Collateral. Buyer and Seller acknowledge that certain equipment has been used as collateral by the Seller when securing SBA loans in the past and is encumbered by the Lender. This specific equipment, to be captured on a separate schedule, shall remain in the possession of the Companies.

[*Id.* ¶ 37]. Additionally, the Amended Operating Agreements require Plaintiff's consent to sell any assets of the Companies, other than in the ordinary course of business and to borrow money. [*Id.* ¶¶ 38, 39].

Plaintiff initiated this lawsuit against Kutz, Cross Country, Balestrino, and Madison One. [Doc. No. 1]. Plaintiff later voluntarily dismissed Balestrino and Madison One. [Doc. No. 24]. In his Amended Complaint, Plaintiff alleges that Cross Country and Kutz never paid the Purchase Price, did not allocate the Purchase Price to debts and payables in accordance with the Purchase Agreement, and did not provide the schedule required by the Purchase Agreement. [Doc. No. 5 ¶ 41]. Additionally, Plaintiff claims that Cross Country and Kutz have taken the following actions in violation of the Purchase Agreement and the Amended Operating Agreements: hiring multiple employees at a salary in excess of $100,000.00 without obtaining the approval of Plaintiff; establishing new checking accounts in the name of "Rufnex Industrial LLC;" using the Companies' assets for Defendants' personal use; applying to Velocity Financial for factoring agreements to sell the Companies' accounts receivables; and engaging Purple Wave Auction for the purpose of appraising and potentially selling the assets of the Companies.

[*Id.* ¶ 42]. Plaintiff also states that Cross Country received several loans from Small Business Recovery Foundation that it should have disclosed to Plaintiff because they are, in essence, loans to the Companies. [*Id.* ¶¶ 43, 44].

Plaintiff seeks a temporary restraining order and preliminary injunction and brings the following claims against Cross Country and Kutz: breach of the Purchase Agreement, breach of the Amended Operating Agreements, breach of fiduciary duty, unjust enrichment, a request for an accounting, alter ego liability, a request for a receivership, fraud against Kutz, and civil conspiracy. [*Id.* ¶¶ 50–105].

Kutz and Cross Country moved to partially dismiss Plaintiff's Amended Complaint, seeking to dismiss Plaintiff's claims for breach of the Purchase Agreement, breach of the Amended Operating Agreements, alter ego liability, fraud, and civil conspiracy. [Doc. No. 18 at 4–15].[1]

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a

---

[1] In this Order, the Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

defendant's liability" will not suffice. *Id.* (internal quotation marks and citation omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth, and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

The Court must address what the Court can properly consider when deciding Defendants' Motion. "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Accordingly, the Court may consider the Purchase Agreement and the Amended Operating Agreements because Plaintiff references them in his Amended Complaint and bases his causes of action for breach upon these documents. [*See* Doc. No. 5 ¶¶ 36–39, 55–62; *see also* Doc. Nos. 18-1 and 18-2].

### III.  DISCUSSION

#### A.  Plaintiff sufficiently pleads personal damages.

The Court first turns to Defendants' argument that "[t]he Amended Complaint as a whole suffers from an overarching defect pervading every claim" because Plaintiff has not pled that he personally suffered damages from Defendants' alleged conduct and has instead only argued that the Companies suffered damages. [Doc. No. 18 at 4]. Thus,

5

according to Defendants, Plaintiff lacks standing. [*Id.* at 5]. Plaintiff counters that he has alleged damages and that, at the pleading stage, generalized allegations of damages suffice. [Doc. No. 21 at 6–7].

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). As cited by Plaintiff, the Amended Complaint does allege that he suffered injury as a result of Defendants' conduct. [*See* Doc. No. 21 at 7 (citing Doc. No. 5 ¶¶ 58, 62, 68, 89–90, 105)]. In their Reply, Defendants do not respond to Plaintiff's argument that his general allegations of damages suffice for standing at this pleading stage of the litigation. [*See* Doc. No. 25]. Accordingly, the Court concludes that Plaintiff has adequately pled damages sufficient for standing.

> **B.     Plaintiff has not sufficiently pled a breach of the Purchase Agreement against Kutz.**

Defendants argue that Plaintiff fails to state a claim for breach of the Purchase Agreement against Kutz. [Doc. No. 18 at 6–8]. Specifically, Defendants state that the parties to the Purchase Agreement are Plaintiff and Cross Country and that Kutz is not a party to that agreement. [*Id.* at 6]. In response, Plaintiff states that Kutz executed the Purchase Agreement in his individual capacity because he signed the agreement both on behalf of Cross Country and also in his individual capacity. [Doc. No. 21 at 8–9]. Plaintiff only cites Kutz's signature block as indicative of the parties' intent to bind Kutz

6

in his individual capacity and does not cite any supporting provisions of the Purchase Agreement. [*See id.*].

The general rule under Oklahoma law is that "the law presumes an agent of a disclosed principal intends by his signature on a contract to bind only his principal." *Carter v. Schuster*, 2009 OK 94, ¶ 20, 227 P.3d 149, 155, *as corrected* (Dec. 18, 2009), *as corrected* (Dec. 22, 2009). Accordingly, in the absence of provisions in the Purchase Agreement purporting to bind Kutz in his individual capacity, the Court presumes Kutz signed in his capacity as a member of Cross Country unless Plaintiff can point to a provision in the Purchase Agreement that imposes individual liability upon Kutz. *See, e.g.*, *Smoot v. B & J Restoration Servs., Inc.*, 2012 OK CIV APP 58, ¶ 10, 279 P.3d 805, 812 (reviewing contract as a whole to determine in what capacity individual officers of a corporation signed). Because Plaintiff has not argued that the terms of the Purchase Agreement show an intention to bind Kutz in his individual capacity, the Court concludes that Kutz signed the agreement on behalf of Cross Country in his capacity as a member. [*See* Doc. No. 21 at 8–9]. Accordingly, the Court dismisses Plaintiff's claim for breach of the Purchase Agreement against Kutz.

### C.    Plaintiff has stated a claim for breach of the Purchase Agreement against Cross Country.

Defendants next argue that Plaintiff has failed to state a claim for breach of the Purchase Agreement against Cross Country. [Doc. No. 18 at 8–10]. As identified by Defendants in their Motion, Plaintiff states three ways in which Defendants breached the Purchase Agreement:

>Failing to pay the Purchase Price;
>
>Failing to immediately apply the Purchase Price to the "outstanding credit card debts, outstanding payables, equipment repairs, insurance premiums, and payroll of the Companies" as required under Section 1.5.2 of the Purchase Agreement; and
>
>Engaging Purple Wave Auction to review the Companies collateral in preparation for an auction of the Companies' collateral, in violation of Section 1.5.2.3 of the Purchase Agreement.

[Doc. No. 5 ¶ 57]. Defendants argue that Plaintiff's claim for breach of the Purchase Agreement incorrectly relies upon Plaintiff's allegation that Defendants failed to make a "lump sum" payment, which the Purchase Agreement does not require. [Doc. No. 18 at 8 (quoting Doc. No. 5 ¶ 41)].

The Purchase Agreement provides as follows: "[t]he purchase price for the Purchased Interests shall be $2,600,000.00 (Two-Million-Six-Hundred-Thousand Dollars) which Seller agrees those funds shall immediately apply to the outstanding credit card debts, outstanding payables, equipment repairs, insurance premiums, and payroll of the Companies." [Doc. No. 18-1 at 3, § 1.5.2]. The Purchase Agreement further provides that "[a]t the Closing, the Seller shall deliver to the Buyer duly executed instruments of transfer evidencing the transfer of the Purchased Interests to the Buyer, and *the Buyer shall deliver to the Seller the Purchase Price* and evidence of the assumption of the liabilities of the Seller." [*Id.* at 4, § 1.5.3 (emphasis added)]. Accordingly, drawing all inferences in favor of Plaintiff, the plain language of the Purchase Agreement supports Plaintiff's interpretation that the Purchase Price, in its entirety, was due upon closing. Nor have Defendants cited any provision of the Purchase Agreement that contradicts this

8

interpretation. [*See* Doc. No. 18 at 8–9, Doc. No. 25 at 3–4]. The Court concludes that Plaintiff's allegations that Defendants failed to pay the Purchase Price state a claim for breach of the Purchase Agreement.

Having concluded that Plaintiff has alleged facts sufficient to state a claim for breach of the Purchase Agreement, the Court does not need to address Defendants' remaining arguments regarding whether Plaintiff states a claim for breach of the Purchase Agreement. Defendants attack Plaintiff's remaining grounds for alleging breach of the Purchase Agreement. [*See* Doc. No. 18 at 9–10]. The Court's role upon consideration of a motion to dismiss is to determine whether a party's factual allegations, when taken as true, state a claim. *See Twombly*, 550 U.S. at 555–56; *see also* Fed. R. Civ. P. 12(b)(6). "Although Rule 12(b)(6) is the proper procedural mechanism to dismiss part of a complaint, many courts have recognized that a party may not use Rule 12(b)(6) to dismiss only part of a *claim*." *Redwind v. W. Union, LLC*, No. 3:18-cv-02094-SB, 2019 WL 3069864, at *4 (D. Or. June 21, 2019), *report and recommendation adopted*, No. 3:18-cv-2094-SB, 2019 WL 3069841, at *1 (D. Or. July 12, 2019) (citing *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) and *Doe v. Napa Valley Unified Sch. Dist.*, No. 17-cv-03753-SK, 2018 WL 4859978, at *2 (N.D. Cal. Apr. 24, 2018)). In other words, the Court may not dismiss only part of a claim's underlying allegations if the claim otherwise survives. *See Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009) ("The Court is unaware, however, of any situation in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged."); *In re Netopia, Inc. Sec. Litig.*, No. C-04-03364 RMW,

2005 WL 3445631, at *3 (N.D. Cal. Dec. 15, 2005) (denying a motion to dismiss because Rule 12(b)(6) "should not be used on subparts of claims; a cause of action either fails totally or remains in the complaint"); *compare* Fed. R. Civ. P. 12(b)(6) (allowing a party to move for "failure to state a claim upon which relief can be granted"), *with* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense— *or the part of each claim or defense*—on which summary judgment is sought." (emphasis added)).

In accordance with these principles, because the Court has concluded that Plaintiff has adequately alleged at least one basis for his claim for breach of the Purchase Agreement, the Court need not address whether Plaintiff's remaining bases for breach of the Purchase Agreement are sufficient. In other words, Plaintiff's claim for breach of the Purchase Agreement against Cross Country survives Defendants' Motion.

### D. Plaintiff does not state a claim for breach of the Amended Operating Agreements by Kutz.

Defendants move to dismiss Plaintiff's breach of the Amended Operating Agreements claim against Kutz, stating that Cross Country, not Kutz, is a party to those agreements. [Doc. No. 18 at 10–11]. Plaintiff counters that, the Amended Operating Agreements specifically provide for liability for Kutz. [Doc. No. 21 at 12–13]. Section 8.02 of the Amended Operating Agreements provides as follows:

> No Covered Person shall be liable to the Company, the Members, or any Assignee for any loss, damage, or claim incurred by reason of any action taken or omitted to be taken by such Covered Person in their capacity as a Covered Person, so long as such action or omission does not constitute fraud, gross negligence, willful misconduct, or a material breach or knowing violation of this Agreement.

10

[Doc. No. 18-2 at 13]. The Amended Operating Agreements define a "Covered Person" as a Member, Officer, and Tax Matters Representative. [*Id.* at 3]. Plaintiff asserts that Kutz is liable for breach because he is the Chief Executive Officer of the Companies and thus a covered person. [Doc. No. 21 at 13]. However, Plaintiff states that Kutz is the Chief Executive Officer of the Companies for the first time in his Response. [*See id.*]. Plaintiff does not state this in his Amended Complaint. [*See* Doc. No. 5]. Nor are there allegations in the Amended Complaint from which the Court can infer Kutz is Chief Executive Officer. [*See id.*]. Accordingly, the Court cannot consider this as a basis for whether Plaintiff states a claim for breach of the Amended Operating Agreements against Kutz.

The Court, therefore, concludes that the Amended Complaint on its face does not assert a claim for breach of the Amended Operating Agreements against Kutz because Kutz is not a party to those agreements and because the only basis upon which Plaintiff seeks to impose liability upon Kutz is his status as a "Covered Person" under the Amended Operating Agreements.

### E.  Plaintiff states a claim for breach of the Amended Operating Agreements against Cross Country.

Defendants argue that Plaintiff has not alleged conduct that constitutes breach of the Amended Operating Agreements against Cross Country. [Doc. No. 18 at 11–12]. Plaintiff states the following as the bases for his breach claim:

> Hiring employees (including a part-time CFO and General Manager) with a salary in excess of $100,000.00, without the approval of Plaintiff;

>Applying to Velocity Financial for purposes of committing the Companies to a factoring agreement, which would sell the Companies accounts receivables, without the approval of Plaintiff; and
>
>Borrowing sums from the "Small Business Recovery Foundation," and other unknown persons without the approval of Plaintiff.

[Doc. No. 5 ¶ 61]. In their Motion, Defendants attack two of these bases as inadequate to state a breach claim. [*See* Doc. No. 18 at 11–12]. Defendants do not, however, challenge that hiring employees with a salary in excess of $100,000 without Plaintiff's approval is an adequate basis for a breach claim. [*See id.* (challenging that applying to a factoring company constitutes breach and challenging that loans to Cross Country without Plaintiff's approval constitutes breach)]. As discussed above, the Court may not dismiss only part of a claim's underlying allegations if the claim otherwise survives. *See Thompson*, 657 F. Supp. 2d at 1129. Because Defendants have not challenged every basis for Plaintiff's claim for breach of the Amended Operating Agreements, the Court concludes that Plaintiff has stated a claim for breach and denies Defendants' motion to dismiss this claim against Cross Country.

F. **Plaintiff does not state a claim for alter ego liability.**

Defendants next move the Court to dismiss Plaintiff's claim for alter ego liability. [Doc. No. 18 at 12–13]. Plaintiff claims that "Cross Country is the alter ego of Kutz." [Doc. No. 5 ¶ 79].

Citing 12 Okla. Stat. § 682, Defendants argue that Plaintiff cannot recover from Kutz on the theory of alter ego liability unless he first has a judgment against Cross Country. [Doc. No. 18 at 13]. Plaintiff responds that the statute at issue does not preclude

12

Plaintiff from suing Kutz for his own conduct. [Doc. No. 21 at 16–17]. Section 682(B) provides:

> No suit or claim of any nature shall be brought against any officer, director or shareholder for the debt or liability of a corporation of which he or she is an officer, director or shareholder, until judgment is obtained therefor against the corporation and execution thereon returned unsatisfied. This provision includes, but is not limited to, claims based on vicarious liability and alter ego. Provided, nothing herein prohibits a suit or claim against an officer, director or shareholder for their own conduct, act or contractual obligation, not within the scope of their role as an officer, director or shareholder, arising out of or in connection with their direct involvement in the same or related transaction or occurrence.

Pursuant to the plain language of the statute, Plaintiff may sue Kutz for his own conduct, which he has done in the forms of his causes of action asserted directly against Kutz based upon Kutz's actions, not the actions of Cross Country. [*See, e.g.*, Doc. No. 5 ¶¶ 63–68 (accusing Kutz of breach of fiduciary duty by engaging in self-dealing)]. *See Dennis v. Good Deal Charlie, Inc.*, No. 20-CV-00295-GKF-JFJ, 2021 WL 815841, at *6 (N.D. Okla. Mar. 3, 2021) ("[Section 682(B)] does not preclude imposition of personal tort liability on an officer, director, or shareholder for the person's acts outside the scope of his or her role as an officer, director, or shareholder."); *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, No. CIV-14-650-C, 2015 WL 6835428, at *4 (W.D. Okla. Nov. 6, 2015) ("12 Okla. Stat. § 682(B) is not applicable for the claims brought by Plaintiff against [the sole shareholder]. Plaintiff is not bringing an alter ego or derivative action claim against [the shareholder], but instead asserts that [the shareholder] . . . had direct participation in each alleged claim. The actions asserted by Plaintiff do not arise out of

13

[the shareholder] acting as a shareholder or officer, but rather as a direct participant and corporation.").

The statute precludes Plaintiff from seeking to recover from Kutz for the actions of Cross Country by virtue of his role as Cross Country's member, including based upon alter ego liability. *See Dennis*, 2021 WL 815841, at *7 (rejecting allegations of alter ego liability against an officer of a company as barred by § 682(B)). To recover from Kutz based on alter ego liability, Plaintiff must satisfy the conditions precedent of the statute—judgment is obtained against Cross Country and execution is returned unsatisfied. *See id.* (dismissing allegations of alter ego liability as premature because statutory conditions had not been satisfied); *see also Kingsbury v. Westlake Mgmt. Co.*, No. CIV-14-468-M, 2015 WL 13189663, at *2 (W.D. Okla. Dec. 22, 2015) ("Section 682(B) sets forth two conditions that must be met before a party's alter ego claim arises. First, judgment must be obtained against the corporation, and second, execution on the judgment must be returned unsatisfied.").

Because Plaintiff has not obtained a judgment from Cross Country, nor has it been returned unsatisfied, Plaintiff has not satisfied the conditions precedent to bringing a claim for alter ego liability. Therefore, the Court dismisses this claim.

### G. Plaintiff fails to plead fraud with particularity.

Defendants next argue that the Court should dismiss Plaintiff's fraud claim for failure to plead fraud with particularity as required by Federal Rule of Civil Procedure 9(b) or for failure to state a claim. [Doc. No. 18 at 13–15]; Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

14

constituting fraud or mistake."). Under Oklahoma law, a plaintiff asserting fraud must plead (1) the defendant made a material representation; (2) that the representation was false; (3) the defendant knew it was false or made it recklessly, without regard for its truth; (4) the defendant made it with the intention that the plaintiff act upon it; and (5) injury was suffered by the plaintiff as a result. *See McCain v. Combined Commc'ns Corp. of Okla., Inc.*, 1998 OK 94, ¶ 11, 975 P.2d 865, 867. "Further, to meet the specificity requirement, a party alleging fraud must set forth 'the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Mittal Well Tech, LLC v. Prof'l Well Servs., Inc.*, No. CIV-08-697-D, 2008 WL 5111160, at *2 (W.D. Okla. Dec. 2, 2008) (emphasis omitted) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006)).

In Plaintiff's Amended Complaint, he pleads the elements of fraud, and specifically outlines the substances of the misrepresentations as follows:

> Defendants made material misrepresentations to Plaintiff regarding the purchase of the Companies, including but not limited to: (i) misrepresenting the Defendants' intent in purchasing a majority interest in the Companies; (ii) misrepresenting the role in which Balestrino would play in the purchase of the Companies; and, (iii) mispresenting and/or wholly failing to disclose the contract and/or agreements Defendants entered into on behalf of the Companies.

[Doc. No. 5 ¶ 86]. Defendants attack Plaintiff's fraud allegations as failing to state a claim and as failing to meet the particularity requirements of Rule 9(b). In his Response, Plaintiff specifically identifies the misrepresentations upon which his fraud claim rely:

> Kutz informed Plaintiff that his "family business" would acquire the Companies, but failed to inform Plaintiff that such "family business" had been legally dissolved. [Doc. No. 5 ¶ 30].

15

> Kutz informed Plaintiff that he would get the Companies "turned around and profitable again." [*Id.* ¶ 32].
>
> Kutz presented and had Plaintiff sign a Purchase Agreement that "varied from the drafts Plaintiff had previously reviewed." [*Id.* ¶ 36].
>
> Kutz failed to disclose that he and/or Cross Country were receiving loans from the Small Business Recovery Foundation. [*Id.* ¶ 44].
>
> Kutz negotiated and entered into contracts which misrepresent Plaintiff's (and his wife's) interest in the Companies. [*Id.* ¶ 46].

[Doc. No. 21 at 18]. Each of these misrepresentations is inadequate to meet the particularity requirements of Rule 9(b). Paragraph 30 of Plaintiff's Amended Complaint fails to identify the time and place of the alleged misrepresentation, as well as the consequences of it. [*See* Doc. No. 5 ¶ 30]. Paragraph 32 also fails to state the time and place of the alleged misrepresentation. [*See id.* ¶ 32]. Paragraph 36 does not identify the place and exact contents of the alleged misrepresentation, nor does it identify the consequences. [*See id.* ¶ 36]. Paragraph 44 does not specifically identify the time, the place, the exact contents, or the consequences of the misrepresentation. [*See id.* ¶ 44]. Paragraph 46 does not identify the consequences of the alleged misrepresentation. [*See id.* ¶ 46]. Accordingly, none of the alleged misrepresentations identified by Plaintiff as the bases for his fraud claim meets the particularity requirements of Rule 9(b), and the Court dismisses them.

### H.   **Plaintiff states a claim for civil conspiracy.**

Lastly, Defendants argue that the Court should dismiss Plaintiff's claim for civil conspiracy because Plaintiff fails to allege an underlying tort. [Doc. No. 18 at 15].

16

"Under Oklahoma law, a civil-conspiracy claim requires an underlying tort." *Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1100 (10th Cir. 2025) (citing *Brock v. Thompson*, 1997 OK 127, ¶ 39, 948 P.2d 279, 294 n.66, *as corrected* (Apr. 3, 1998)). In his Response, Plaintiff states that his civil conspiracy claim does rely on an underlying tort—breach of fiduciary duty. [Doc. No. 21 at 19]. Defendants do not address this argument in their Reply. [*See* Doc. No. 25]. Accordingly, the Court concludes that Plaintiff has alleged a tort sufficient to support a claim for civil conspiracy.

## IV.   CONCLUSION

For the reasons outlined above, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** Defendants' Motion and dismisses the following claims without prejudice: (1) Plaintiff's claim for breach of the Purchase Agreement against Kutz, (2) Plaintiff's claim for breach of the Amended Operating Agreements against Kutz, (3) Plaintiff's claim for alter ego liability, and (4) Plaintiff's fraud claim. The Court **DENIES** Defendants' Motion pertaining to the following claims: (1) Plaintiff's claim for breach of the Purchase Agreement against Cross Country, (2) Plaintiff's claim for breach of the Amended Operating Agreements against Cross Country, and (3) Plaintiff's claim for civil conspiracy.

IT IS SO ORDERED this 12th day of November 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE