IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL HOLLAND, an individual, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JUSTIN KUTZ, an individual; and )<br>CROSS COUNTRY EXPRESS, LLC, )<br>a Wisconsin limited liability company, )<br>)<br>Defendants. ) | Case No. CIV-25-00233-JD |

**ORDER**

Plaintiff Michael Holland ("Plaintiff") filed an Amended Complaint [Doc. No. 5], and Defendants Justin Kutz and Cross Country Express, LLC ("Defendants") filed counterclaims against Plaintiff [Doc. No. 19].[1]

Before the Court is Plaintiff's Partial Motion to Dismiss Defendants' Counterclaims ("Motion"). [Doc. No. 22]. Defendants filed a response in opposition to the Motion ("Response") [Doc. No. 26], and Plaintiff replied ("Reply"). [Doc. No. 27]. For the reasons outlined below, the Court grants in part and denies in part the Motion.

**I.    BACKGROUND**

Plaintiff is a member of the following companies: Rufnex Industrial LLC; Rufnex Oilfield Services LLC; and Rednex Oilfield Rentals LLC (collectively, the

---

[1] When the Court cites to paragraphs in [Doc. No. 19], it is citing to the counterclaims beginning on page 17. Additionally, the Court uses page numbering from the CM/ECF stamp at the top of the filing on the district court docket.

"Companies"). [Doc. No. 5 ¶ 8]. The Companies provide support services for the oil and gas industry and offer rental equipment. [*Id.* ¶ 10].

Plaintiff secured several loans for the Companies from U.S. Eagle Federal Credit Union ("U.S. Eagle"). [*Id.* ¶ 14]. Three fatalities involving the Companies' equipment occurred, causing their insurance premiums to sharply increase and placing the Companies at a risk of insolvency. [Doc. No. 19 ¶ 2]. Plaintiff approached Christopher Balestrino about options to help prevent him from defaulting on the U.S. Eagle loans. [*Id.* ¶ 3]. Balestrino introduced Plaintiff to Kutz as a potential buyer for the Companies. [*Id.* ¶ 4].

Over a few months, Plaintiff and Kutz negotiated the purchase of the Companies and ultimately executed the Purchase Agreement and the Amended Operating Agreements, pursuant to which Plaintiff has a 20% ownership interest in the Companies and Cross Country owns 80%. [*Id.* ¶¶ 6, 9]. The Purchase Agreement contained provisions representing that Plaintiff had provided the financial statements of the Companies and that the financial statements "present fairly, in all material respects, the financial position of the Companies." [*Id.* ¶ 8]. The Purchase Agreement also had provisions representing the Companies did not have undisclosed liabilities except under circumstances described therein, the Companies were in compliance with relevant laws, and the Companies had timely paid taxes. [*Id.*]. The Amended Operating Agreements had provisions which require the agreements of all members to approve actions and to sell assets. [*Id.* ¶¶ 9, 10].

Defendants allege that, after the execution of the Purchase Agreement, they obtained additional records, which revealed the following:

> Failure by [Plaintiff] to include an Economic Injury Disaster Loan in the Companies' compiled financial statements or accounting records, which effectively underreported the Companies' liabilities by approximately $500,000;
>
> Failure by [Plaintiff] to report accrued interest in the amount of $175,470 on the total debt service for the U.S. Eagle Loans;
>
> Failure by [Plaintiff] to report outstanding tax obligations of the Companies to the State of Texas in the amount of $61,211;
>
> Failure by [Plaintiff] to disclose that he had sold approximately $55,000 of the Companies' represented equipment inventory prior to execution of the Purchase Agreement;
>
> Failure by [Plaintiff] to disclose the impoundment of a hydrovac truck and unpaid sales tax on that vehicle, creating a total liability of $31,169; and
>
> [Plaintiff] [o]verstated the value of Companies' accounts receivable by $1,774,479 by failing to discount them in the Companies' financial records to reflect that they were subject to a factoring agreement.

[*Id.* ¶ 12]. Additionally, Defendants state that Plaintiff retained two bank accounts that had funds of the Companies' and that Plaintiff changed the credentials to the accounts denying Cross Country access to them after the purchase of the Companies. [*Id.* ¶¶ 14–15]. Defendants state that Plaintiff has refused access to the funds in these accounts for payment of the Companies' financial obligations. [*Id.* ¶¶ 16–17]. Defendants also allege that Plaintiff has withheld his approval for securing short-term infusions of capital in the Companies. [*Id.* ¶ 18].

Defendants assert counterclaims against Plaintiff for breach of the Purchase Agreement, breach of the implied covenant of good faith and fair dealing, breach of the

Amended Operating Agreements, fraud, breach of fiduciary duty, a request for a temporary restraining order and preliminary injunction, a request for a receivership, and a request for an accounting. [*Id.* ¶¶ 19–59]. In his Motion, Plaintiff requests that the Court dismiss Defendants' counterclaims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and fraud. [Doc. No. 22].

## II.     STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citation omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In evaluating a Rule 12(b)(6) motion, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements,

---

[2] Because the Court is analyzing the sufficiency of Defendants' counterclaims, the Court bases its review on the allegations in Defendants' counterclaims. [Doc. No. 19].

however, are not entitled to the assumption of truth, and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

The Court must address what the Court can properly consider when deciding Plaintiff's Motion. "[T]he district court may consider documents referred to in the complaint if the documents are central to the . . . claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). Accordingly, the Court may consider the Purchase Agreement and the Amended Operating Agreements in the record because Defendants reference them in their counterclaims and base their causes of action for breach upon these documents. [*See* Doc. No. 19 ¶¶ 6, 8–12, 19–36; *see also* Doc. Nos. 18-1 and 18-2].

### III.   ANALYSIS

#### A.   Defendants adequately pled counterclaims for breach of the implied covenant of good faith and fair dealing.

Plaintiff first argues the Court should dismiss Defendants' counterclaims for breach of the implied covenant of good faith and fair dealing. [Doc. No. 22 at 6–10]. Defendants assert two counterclaims based on breach of the implied covenant of good faith and fair dealing—one based upon the Purchase Agreement and one based upon the Amended Operating Agreements. [Doc. No. 19 ¶¶ 23–27, 32–36]. Plaintiff asserts that, Defendants do not have a "special relationship" with Plaintiff necessary to allege a claim for breach of the implied covenants of good faith and fair dealing and that, even if such a relationship exists, Defendants have not adequately pled such a claim. [Doc. No. 22 at 6–10].

5

Oklahoma courts recognize two types of claims for breach of the implied covenant of good faith and fair dealing—tortious claims and claims based upon breach of contract. Oklahoma courts have recognized tortious claims for breach of the implied covenants in limited circumstances, such as when a "special relationship" exists between the parties like an insurer and its insured. *See Meyer v. Newrez LLC*, No. 24-CV-43-JDR-CDL, 2025 WL 242255, at *6 (N.D. Okla. Jan. 17, 2025) ("[A] claim for tortious breach of contract may be pursued when the contract creates a special relationship between the parties, such as the relationship between an insurer and its insured.") (citing *First Nat'l Bank & Tr. Co. of Vinita v. Kissee*, 1993 OK 96, ¶ 25, 859 P.2d 502, 509). Defendants stated in their Response that they are not pursuing a claim based in tort but one based in contract. [Doc. No. 26 at 2 ("Defendants are not pursuing *tort* claims for breach of the implied covenant; they are pursuing *contract* claims.")].

Defendants do not have to prove a "special relationship" exists between the parties to assert a claim for breach of the implied covenants based in contract. "In cases involving 'ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability.'" *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 999 (10th Cir. 2008) (quoting *Wathor v. Mut. Assur. Adm'rs, Inc.*, 2004 OK 2, ¶ 5, 87 P.3d 559, 561, *as corrected* (Jan. 22, 2004)).

Oklahoma courts read an implied duty of good faith and fair dealing into every contract. *Wathor*, 2004 OK 2, ¶ 5, 87 P.3d at 561. Plaintiff argues that Defendants fail to state a claim because they do not tie their claims to any specific provisions in the Purchase Agreement or Amended Operating Agreements. [Doc. No. 22 at 8 ("[T]he

6

purported breaches of the implied duty of good faith and fair dealing do not relate to any aspect of performance under the terms of the Purchase Agreement."); *id.* at 9 ("[T]he purported breaches of the implied duty of good faith and fair dealing do not relate to any aspect of performance under the terms of the Amended Operating Agreements.")]. Oklahoma courts have not required parties asserting claims for breach of the implied covenants to assert breach of specific contract provisions, instead recognizing that "[t]his duty prohibits parties to a contract from acting in a way that would 'injure the parties' reasonable expectations [or] impair the rights or interests of the other to receive the benefits flowing from their contractual relationship.'" *Meyer*, 2025 WL 242255, at *5 (quoting *Kissee*, 1993 OK 96, ¶ 24, 859 P.2d at 509). Accordingly, Defendants do not have to assert Plaintiff breached a specific provision of the agreements to successfully plead these counterclaims.

The Court concludes that Defendants have adequately pled counterclaims for breach of the implied duties of good faith and fair dealing because they have alleged facts that, if taken as true, demonstrate Plaintiff has taken actions that would "impair the rights or interests of [Defendants] to receive the benefits flowing from their contractual relationship." *Kissee*, 1993 OK 96, ¶ 24, 859 P.2d at 509. Defendants' allegations that Plaintiff has refused to allow Cross Country access to all the Companies' funds and not agreed to options to infuse the Companies with short-term capital demonstrate that Plaintiff was thwarting the successful operation of the Companies. The Court, therefore,

concludes that Defendants have adequately pled counterclaims for breach of the implied covenants of good faith and fair dealing.[3]

### B. Defendants have not stated a counterclaim for breach of fiduciary duty.

Plaintiff next argues that the Court should dismiss Defendants' counterclaim for breach of fiduciary duty because Oklahoma law does not impose a fiduciary duty upon minority members of an LLC. [Doc. No. 22 at 10–11]. Pursuant to the Purchase Agreement, Plaintiff transferred an 80% ownership interest in the Companies, which are limited liability companies, to Cross Country, and Plaintiff retained a 20% interest. [Doc. No. 18-1 at 2, §§ 1.2, 1.3]. Therefore, as a minority member, Plaintiff contends he does not owe a fiduciary duty to Defendants. [Doc. No. 22 at 10–11]. In Response, Defendants do not cite an Oklahoma statute or case unequivocally imposing a fiduciary duty upon a minority member of an LLC. [*See* Doc. No. 26 at 5–6].

---

[3] In his Reply, Plaintiff argues for the first time that Defendants cannot assert both counterclaims for breach of the implied covenant of good faith and fair dealing and also breach of contract claims:

> Instead, Defendants assert that their standalone claims of breach of the duty of good faith and fair dealing are permissible because they are grounded in contract, not tort. But Defendants also asserted claims for Breach of the Purchase Agreements (Count I) and Breach of the Amended Operating Agreements (Count III). No further contract claims are available.

[Doc. No. 27 at 3]. Since Plaintiff first raises this argument in his Reply and Defendants have not had an opportunity to respond to it, the Court cannot consider this as a basis for dismissing Defendants' counterclaims. *See Garcia v. Lemaster*, 439 F.3d 1215, 1220 (10th Cir. 2006) (declining to address arguments first raised in a reply brief).

A federal court sitting in diversity applies substantive state law. When the Oklahoma Supreme Court has not ruled upon an issue, the Court looks to appellate court decisions for guidance to predict how the Oklahoma Supreme Court would rule. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). However, federal courts "are generally reticent to expand state law without clear guidance from the state's highest court for it is not a federal court's place to expand state law beyond the bounds set by the highest court of the state." *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 948 (10th Cir. 2018) (internal quotation marks, alterations, and citation omitted). In this instance, Defendants have not cited opinions of either the Oklahoma Supreme Court or the intermediate court of civil appeals supporting their position that minority LLC members owe a fiduciary duty. [*See* Doc. No. 26 at 5 (stating that 18 Okla. Stat. § 2017 "strongly implies the legal baseline in Oklahoma is that all LLC members—minority owners included—owe fiduciary duties"); *id.* at 5–6 (explaining the trend in caselaw supports the imposition of such a duty and citing 3C M. Thomas Arnold & H. Wayne Cooper, Vernon's Oklahoma Forms 2d § 15.22 (2024), *Donahue v. Rodd Electrotype Co.*, 328 N.E.2d 505 (Mass. 1975))]. In the absence of such authority, the Court cannot conclude that Defendants have pled a counterclaim recognized by Oklahoma law. Accordingly, the Court dismisses Defendants' counterclaim for breach of fiduciary duty.

### C. Defendants have not pled a fraud counterclaim that is distinct from their breach counterclaims.

Lastly, Plaintiff moves to dismiss Defendants' fraud counterclaim on two bases. First, Plaintiff argues that Defendants fail to plead justifiable reliance, and second, Plaintiff argues that Defendants' fraud counterclaim is impermissibly duplicative of Defendants' breach of contract counterclaims. [Doc. No. 22 at 11–13].

The Court first addresses Plaintiff's argument that Defendants' fraud counterclaim is duplicative of their breach of contract counterclaims. [*Id.* at 12–13]. Defendants claim that Plaintiff breached the Purchase Agreement by failing to deliver financial statements that accurately disclosed the financial positions of the Companies, failing to disclose liabilities of the Companies, failing to disclose the Companies' noncompliance with applicable laws, and failing to disclose the Companies' noncompliance with tax laws. [Doc. No. 19 ¶ 21]. Defendants claim that Plaintiff breached the Amended Operating Agreements by "disposing of a material part of the assets of the Companies through his sequestration and assertion of personal control over funds of the Companies held in the Blue Sky Accounts." [*Id.* ¶ 30]. Defendants' fraud counterclaim alleges that Plaintiff made "material representations to and/or withheld material information from Defendants regarding the assets, liabilities, and financial condition of the Companies." [*Id.* ¶ 38]. The alleged misrepresentations pertain to assets or liabilities that Plaintiff allegedly did not accurately report to Defendants. [*See id.* ¶ 12].

"[I]t is well-settled that Oklahoma law does not permit the simultaneous pursuit of fraud and breach of contract claims where the two claims are not sufficiently distinct."

10

*Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, P.C. v. Oceanus Ins. Grp.*, No. 13-CV-762-JED-PJC, 2014 WL 3891267, at *5 (N.D. Okla. Aug. 7, 2014). As stated by Defendants, Oklahoma courts have acknowledged limited situations where parties can pursue breach of contract and fraud claims simultaneously. [Doc. No. 26 at 8–9 (citing *Atkinson*, 2014 WL 3891267, at *5)]. Defendants argue, without explanation, that they are asserting Plaintiff fraudulently induced them to enter into the agreements, which is a permissible basis for asserting a fraud claim. [*See* Doc. No. 26 at 9 ("Defendants are permitted under Oklahoma law to sue him for fraudulently inducing their purchase of a controlling interest in the Companies.")]. Defendants do not, however, provide support for this argument beyond conclusory statements. [*See id.*]. Defendants instead assert their fraud and breach of contract claims do not rely upon the same factual allegations. [*Id.*]. The Court disagrees.

Defendants' counterclaim for breach of the Purchase Agreement and counterclaim for fraud rely upon "the same set of operative facts." *Atkinson*, 2014 WL 3891267, at *5. Each basis for Defendants' fraud claim is encompassed in Defendants' breach claim. Defendants' fraud counterclaim is based upon misrepresentations outlined in paragraph twelve of their counterclaims. [Doc. No. 19 ¶ 38]. In that paragraph, Defendants state that Plaintiff failed to disclose the following in the Companies' financial statements: an Economic Injury Disaster Loan; accrued interest on the total debt service for the U.S. Eagle Loans in the Companies'; outstanding tax obligations; that Plaintiff had sold approximately $55,000 of the Companies' represented equipment inventory; and the impoundment of a hydrovac truck and unpaid sales tax on that vehicle. [*Id.* ¶ 12].

11

Defendants' breach of the Purchase Agreement counterclaim encompasses each of these allegations. [*See id.* ¶ 21 ("[Plaintiff] materially breached the Purchase Agreement by . . . [f]ailing to deliver Financial Statements prepared in accordance with generally accepted accounting principles fairly presenting the financial position of the Companies . . .; [and] [f]ailing to disclose outstanding liabilities and/or obligations of the Companies . . . .")]. Defendants' fraud counterclaim also alleges that Plaintiff failed to report outstanding tax obligations and overstated the Companies' accounts receivable, which Defendants' allegations pertaining to breach of the Purchase Agreement also encompass. [*See id.* ¶ 21 ("[Plaintiff] materially breached the Purchase Agreement by . . . [f]ailing to disclose multiple instances of the Companies' noncompliance with tax payment obligations.")].

Accordingly, Defendants' fraud counterclaim is not distinct from Defendants' breach counterclaim. The Court, therefore, concludes that Defendants have not adequately pled a fraud counterclaim. Because the Court concludes dismissal is warranted upon this ground, the Court does not reach Plaintiff's second ground for dismissal of Defendants' fraud counterclaim.

## IV.    CONCLUSION

For the reasons outlined above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion. The Court **GRANTS** the Motion pertaining to Defendants' breach of fiduciary duty counterclaim and fraud counterclaim and dismisses those counterclaims without prejudice. The Court **DENIES** the Motion pertaining to Defendants' counterclaims for breach of the implied covenant of good faith and fair dealing.

IT IS SO ORDERED this 12th day of November 2025.

                                        JODI W. DISHMAN
                                        UNITED STATES DISTRICT JUDGE

13